**Amia A. ELLIS, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 12, 2012.

Decided Jan. 22, 2013.

---

Reginald Allen, Philadelphia, for petitioner.

Carol J. Mowery, Assistant Chief Counsel, Harrisburg, for respondent.

Before McGINLEY, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Amia A. Ellis (Claimant) petitions for review of the December 23, 2011 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's determination that Claimant is ineligible for benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.

The facts of this case can be summarized as follows. Claimant was employed as a full-time Sales Supervisor with Harbor Silver and Gold (Employer) from July 30, 2007, to July 29, 2011. Employer has a policy through written agreement with its employees, including Claimant, that the employees will "start their shift on time, ready to work." Under Employer's policy, if an employee cannot arrive at work on time, the employee must call a manager and explain why he or she will be late. Employer's Handbook also provides that "excessive" tardiness is a ground for dismissal. (N.T., 9/26/2011, at 10–11; Exhibit SC–16.)

During the course of Claimant's employment with Employer, Donna Cignarella, Store Manager for Employer, had at least four face-to-face conversations with Claimant to discuss her tardiness. From June 7 to June 23, 2011, Claimant was late for work six times; in five of these instances, Claimant was approximately thirty minutes late. On June 24, 2011, Cignarella provided Claimant with a written warning, called a Performance Discussion Record (PDR), which states that "Performance Improvement [is] Needed" and that Claimant has to show up for work on time. According to Employer's disciplinary process, a PDR is a serious reprimand that generally follows several face-to-face warnings and typically serves as a final warning before termination. (N.T., 9/26/2011, at 10–11; Exhibits SC–12 and SC–15.)

After receiving the PDR, Claimant had a three-week vacation and was scheduled to return on July 29, 2011, and work from 3 p.m. to 10:30 p.m. On July 29, 2011, Claimant contacted Employer and said that she would be "a little" late but did not provide a reason why. Claimant arrived to work approximately forty-five minutes late. At that point, Employer discharged Claimant for her habitual tardiness and for violating its time and attendance rules. (N.T., 9/26/2011, at 8, 10; Exhibit SC–12.)

Claimant thereafter filed a claim for benefits. On August 19, 2011, the local service center determined that Claimant was ineligible for benefits because Employer warned her to arrive at work on time and Claimant did not have good cause for showing up late on July 29, 2011.

Claimant appealed and a hearing was conducted before a referee on September 26, 2011. At the hearing, Cignarella and Lauren Rago, Employer's District Manager, testified to the facts set forth above. Among other documents, Employer introduced into evidence the PDR as Exhibit SC–15 and its Handbook as Exhibit SC–16.

In rebuttal, Claimant testified that she had good cause for being late on July 29, 2011. In sum, Claimant testified that she

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as *amended*, 43 P.S. § 802(e). Section 402(e) states that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work.

had to drop off medical documents at the county assistance office in order to maintain her medical benefits and had trouble with the public transportation system.

By decision and order dated September 27, 2011, the referee found that Employer's Handbook and policies demonstrate that employees are to arrive for their scheduled shift on time; that Claimant was aware of this rule; that Claimant received prior discipline from Employer, including face-to-face discussions and the PDR; that Claimant arrived for work approximately forty-five minutes late on July 29, 2011; and that Claimant contacted Employer and indicated that she would be late but did not provide a reason why. (Findings of Fact Nos. 2–9.) Based upon these facts, the referee concluded that Claimant's tardiness violated Employer's policies and constituted willful misconduct. In addition, the referee discredited Claimant's testimony that she had good cause for being late, finding that "Claimaint was not able to adequately explain why it took her more than three hours to get from the county assistance office to her work location." (Referee's decision at order at 2.) Claimant appealed to the Board, which affirmed the referee's denial of benefits, adopting the referee's findings and conclusions of law.

On appeal to this Court,[2] Claimant first argues that Employer's policies are vague and arbitrary because they do not mention how many instances of tardiness will be permitted before an employee is discharged and vest the Employer with unfettered discretion to determine when tardiness becomes "excessive." Claimant also contends that she was not specifically warned that she would be discharged the next time she was late. For these reasons, Claimant asserts that Employer failed to prove that she engaged in willful misconduct. We disagree.

■ Under section 402(e) of the Law, an employee is ineligible for unemployment compensation benefits when she has been discharged from work for willful misconduct connected with her work. *Guthrie v. Unemployment Compensation Board of Review,* 738 A.2d 518, 521 (Pa.Cmwlth. 1999). The burden of proving willful misconduct rests with the employer. *Id.* Although willful misconduct is not defined by statute, it has been described as: (1) the wanton and willful disregard of the employer's interests; (2) the deliberate violation of rules; (3) the disregard of standards of behavior that an employer can rightfully expect from his employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Id.*

■ When a charge of willful misconduct is based on the violation of a work rule, the employer must prove the existence of the rule, the reasonableness of the rule, and the fact of its violation. *Owens v. Unemployment Compensation Board of Review,* 748 A.2d 794, 798 (Pa.Cmwlth. 2000).

However, the existence of a specific rule is not necessary where the employer has a right to expect a certain standard of behavior, that standard is obvious to the employee, and the employee's conduct is so inimical to the employer's interests that discharge is a natural result. *Orend v. Unemployment Compensation Board of*

---

2. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

*Review,* 821 A.2d 659, 663 (Pa.Cmwlth. 2003). One situation where a specific rule is unnecessary is when an employee fails to show up for work on time. It is well-settled that an employer has the right to expect that its employees will attend work when they are scheduled and that they will be on time; habitual tardiness is behavior that is "inimical to an employer's interest." *Fritz v. Unemployment Compensation Board of Review,* 66 Pa.Cmwlth. 492, 446 A.2d 330, 333 (1982).

"A conclusion that the employee has engaged in disqualifying willful misconduct is especially warranted in ... cases where ... the employee has been warned and/or reprimanded for prior similar conduct." *Department of Transportation v. Unemployment Compensation Board of Review (Nelson),* 84 Pa.Cmwlth. 364, 479 A.2d 57, 58 (1984). "We have consistently held that chronic tardiness, particularly after a warning, exhibits a sufficient disregard of the employer's interests to constitute willful misconduct." *Conibear v. Unemployment Compensation Board of Review,* 76 Pa.Cmwlth. 264, 463 A.2d 1231, 1232 (1983).

In *Nelson,* the claimant had a history of tardiness and absences and received numerous written warnings and reprimands for violating the employer's attendance rules. Shortly after receiving his last reprimand, the claimant did not report that he would be absent for work until 11:00 a.m., in violation of the employer's rule that absences must be reported within two hours of the scheduled start of an employee's shift. As a result of the claimant's failure to timely report his absence, and in light of his history of absenteeism/tardiness, the employer terminated the claimant.

There was nothing in *Nelson* to suggest that the employer had a set number of allowable absences in its policy or provided the claimant with specific notice that his next transgression would result in termination. Nonetheless, this Court determined that through the prior reprimands and warnings, the claimant was aware that the employer was dissatisfied with his attendance record and that his employment would be jeopardized by future violations. This Court also determined that the claimant should have contacted his employer in a timely fashion because he was fully aware of the rules he was to abide by in the reporting of his absence. For these two reasons, we concluded that the claimant engaged in willful misconduct.

■ Contrary to Claimant's argument, Pennsylvania law does not require a detailed termination policy regarding tardiness or specific notice that the next infraction will result in discharge, so long as the employee's tardiness is habitual and the employee is provided with notice that future tardiness is unacceptable. *Orend; Fritz; Nelson.*

■ Here, in a period of two and one-half weeks, Claimant was unpunctual a total of six times and five of these were instances where Claimant was substantially late; thus, Employer established that Claimant was tardy on a habitual basis. *See Fritz,* 446 A.2d at 333 (concluding that "six instances of [the claimant's] unexcused extremely late behavior, within a two month period, is sufficient for a finding of willful misconduct.").[3] Moreover, Cignarella had at least four conversations with Claimant regarding her tardiness and Claimant received the PDR informing her that it was imperative that she arrive at

---

**3.** On appeal, Claimant does not assert that she had good cause for being late six times in two and a half weeks or that any of her instances of tardiness were otherwise excusable.

work on time. Consequently, as in *Nelson,* Claimant received notice that her job would be in jeopardy if she continued to be tardy without justification. After receiving these warnings, Claimant was late for work on July 29, 2011; although Claimant called Employer in advance, she failed to explain why she would be late as required by Employer's rules. On this record, we conclude that Employer met its burden of establishing that Claimant's habitual tardiness constituted willful misconduct.[4]

██ Because Employer proved that Claimant was discharged for willful misconduct, the burden of proof shifted to Claimant to establish that she had good cause for being late on July 29, 2011. *Guthrie,* 738 A.2d at 522. Good cause is shown "where the action of the employee is justified or reasonable under the circumstances." *Id.*

Claimant argues that her testimony proved good cause for being late because it was necessary for her to drop off medical documents and she could not have known that the public transportation system and traffic would result in substantial delays. We disagree.

██ The issue of whether good cause exists is a factual one for the Board to resolve. *Wideman v. Unemployment Compensation Board of Review,* 95 Pa.

Cmwlth. 218, 505 A.2d 364, 368 (1986). "The Board, as ultimate fact finder, determines the weight and credibility of the evidence and is free to reject even uncontradicted testimony." *Id.* Here, the Board adopted the referee's finding that Claimant's testimony was not credible and was insufficient to establish good cause. It was within the exclusive province of the Board to make this finding and Claimant cannot impugn it on appeal. Therefore, Claimant's arguments lack merit and we affirm the Board's order.

### ORDER

AND NOW, this 22nd day of January, 2013, the December 23, 2011 order of the Unemployment Compensation Board of Review is hereby affirmed.

---

4. Claimant also presents a series of scattershot arguments related to evidentiary inferences. Particularly, Claimant asserts that it was inferable from the evidence that she was "treated more severely than anyone else" because she returned from a vacation; that "some lateness was an issue with the entire staff;" that "employees across the board were allowed to arrive late habitually;" that Employer had "advance notice that [Claimant] was tending to [an] important matter" on July 29, 2011; and that Employer arbitrarily "choose to no longer try to accommodate her."

In short, most of these proposed inferences are not supported by the evidence adduced at the hearing. To the extent that any such inferences were permissible, the Board as fact finder declined to draw them. The fact that a claimant may have "given a different version of events, or ... might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Compensation Board of Review,* 168 Pa. Cmwlth. 292, 650 A.2d 1106, 1108–1109 (1994). We conclude that the testimony of Employer's witnesses and Employer's documentary evidence constitutes substantial evidence supporting the Board's findings.