# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Genecia L. Williams,                         :
                                             :
              Petitioner                     :
                                             :
      v.                                     : No. 383 C.D. 2015
                                             : Submitted: September 11, 2015
                                             :
Unemployment Compensation                    :
Board of Review,                             :
                                             :
              Respondent                     :


BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                        **FILED:  November 10, 2015**


        Genecia L. Williams (Claimant) petitions this Court for review of an

order of the Unemployment Compensation Board of Review (Board), affirming the

decision of the referee that she was ineligible for unemployment compensation

benefits under Sections 4(u) and 401 of the Unemployment Compensation Law

(the Law),[1] 43 P.S. §§ 753(u), 801, for 11 weeks in which she received benefits in

2011, imposing a fault overpayment under Section 804(a) of the Law, 43 P.S. §

874(a), and assessing 13 penalty weeks and a penalty of 15% of the overpayment

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-
914.

under Section 801(b) and (c) of the Law, 43 P.S. § 871(b), (c). We affirm the determination that Claimant was ineligible for benefits for the weeks in question, the determination that the overpayment was a fault overpayment, and the 15% penalty, but vacate the assessment of penalty weeks and remand this matter to the Board to address whether the imposition of the maximum penalty weeks is appropriate given the unusual facts of this case.

On January 3, 2011, Claimant filed an application for unemployment compensation benefits and was determined to be eligible. (Record Item (R. Item) 1, Claim Record, Reproduced Record (R.R.) at 61a; R. Item 14, Referee's Decision/Order Finding of Fact (F.F.) ¶1.) Claimant returned to work at Spruce Manor/Extendicare Health Services, Inc. (Employer) on January 25, 2011 and remained employed until she went on medical leave in November 2011. (R. Item 2, Employer Separation Information, R.R. at 50a-56a.) Despite the fact that she was working, bi-weekly claims for benefits were filed for Claimant for the weeks ending January 29, 2011 through April 9, 2011 reporting no earnings. (R. Item 14, Referee's Decision/Order F.F. ¶4 & Reasoning at 2; R. Item 5, Claimant UC-990(A) Form, R.R. at 47a; R. Item 1, Claim Record, R.R. at 60a, 70a, 72a.) A total of $3,630 in benefits was paid to Claimant's state-issued debit card for these 11 weeks. (R. Item 14, Referee's Decision/Order F.F. ¶¶4, 6 & Reasoning at 2; R. Item 1, Claim Record, R.R. at 70a, 72a; R. Item 13, Referee Hearing Transcript (H.T.) at 15, R.R. at 21a.)

On May 5, 2011, Claimant contacted the Department of Labor & Industry (Department) and reported that she was working and that her husband had been filing for benefits without her knowledge or consent. (R. Item 14, Referee's Decision/Order F.F. ¶5; R. Item 1, Claim Record, R.R. at 60a; R. Item 13, H.T. at

2

18, R.R. at 24a.) The Department's Claim Record shows the following notations concerning calls from Claimant and her husband on May 5, 2011:

> DO NOT PAY ANYTHING ON THIS CLAIM CLMT CALL STATES HUSBAND HAS BEEN FILING ON CLAIM NOT HER
>
> SHE STATES SHE IS WORKING FULL TIME
>
> HUSBAND, KENNETH WILLIAMS CALLED & ADMITTED HE FILED 4 WIFE'S BENEFITS W/O HER KNWLDG. SHES WRKNG NOT FILING
>
> WANTS TO REPAY. ADVSD NO OVP HAS BEEN ESTABLISHED ON THIS CLM; CLMT WILL RECV LTR - ONE OVP. IN EFFECT

(R. Item 1, Claim Record, R.R. at 60a.) Notwithstanding this notification by Claimant, the Department did not establish any overpayment for the January 29, 2011 through April 9, 2011 weeks at that time. (R. Item 13, H.T. at 18-19, 24, R.R. at 24a-25a, 30a.)

On October 31, 2014, over three years after Claimant had notified it of the false claims for benefits, the Department sent Claimant a notice of possible overpayment, stating that her report of no earnings for the January 29, 2011 through April 9, 2011 weeks was inconsistent with her wages reported by Employer and requesting that she return a questionnaire explaining the discrepancy. (R. Item 4, Advance Notice, R.R. at 84a-87a.) Claimant, in her response, did not dispute that an overpayment for the weeks in question occurred, but asserted that her husband had filed the claims and that the money had been paid back. (R. Item 5, Claimant UC-990(A) Form, R.R. at 47a.) On November 12, 2012, the Department issued three Notices of Determination with respect to Claimant. The first determination denied benefits for the weeks ending January

3

29, 2011 through April 9, 2011 pursuant to Sections 401, 4(u), and 404(d) of the Law, because Claimant had earnings from Employer and knowingly failed to report those earnings. (R. Item 8, Notice of Determination (Earnings), R.R. at 39a-40a.) The second determination imposed a fault overpayment of $3,630, pursuant to Section 804(a) of the Law. (*Id.*, Notice of Determination of Overpayment, R.R. at 43a-44a.) The third determination assessed 13 penalty weeks and a 15% penalty of $544.50 pursuant to Section 801(b) and 801(c) of the Law for knowingly making false statements or knowingly failing to disclose information in order to obtain or increase benefits. (*Id.*, Notice of Determination of Penalty, R.R. at 45a-46a.)

Claimant appealed these determinations and, on December 9, 2014, the referee held a hearing at which Claimant, represented by counsel, appeared and testified and a Department unemployment claims examiner testified by telephone; neither Claimant's husband nor Employer appeared at the hearing. (R. Item 13, H.T. at 1-2, 8, R.R. at 7a-8a, 14a.)[2] At the referee hearing, the Department's record of Claimant's unemployment claims was introduced in evidence showing that claims were filed in Claimant's name and under her Social Security number for the weeks ending January 29, 2011 through April 9, 2011 and that $3,630 in benefits were paid for those weeks. (R. Item 1, Claim Record, R.R. at 60a, 70a, 72a; R. Item 13, H.T. at 7-9, R.R. at 13a-15a.) Evidence from Employer's records was introduced showing that Claimant was employed and paid wages ranging from $295.20 to $1,111.71 per week during that period, and Claimant admitted that she

---

[2] Claimant sought to introduce a written statement from her husband, but the Department objected to the statement as hearsay and the referee sustained the objection. (R. Item 13, H.T. at 8-9, R.R. at 14a-15a.) Claimant does not challenge the exclusion of that statement in this appeal.

4

was working full-time during those weeks. (R. Item 2, Employer Separation Information, R.R. at 50a-56a; R. Item 13, H.T. at 7-9, 11-12, 14, R.R. at 13a-15a, 17a-18a, 20a.) Claimant did not dispute that claims for her were filed for the weeks ending January 29, 2011 through April 9, 2011 that did not disclose her employment and earnings and that $3,630 in benefits were paid. (R. Item 13, H.T. at 9-17, R.R. at 15a-23a.) Claimant testified only that she did not file those claims and that the claims were filed by her husband without her knowledge. (*Id.* at 11-14, R.R. at 17a-20a.) Claimant, however, admitted that the benefits were paid to her debit card. (*Id.* at 15, R.R. at 21a.)

Claimant also testified that deductions had been made by the Department from benefits when she was unemployed in 2012 and that it was her understanding that those deductions had repaid the January 29, 2011 through April 9, 2011 overpayment. (R. Item 13, H.T. at 12-13, R.R. at 18a-19a.) The Department unemployment claims examiner testified that the deductions from Claimant's 2012 benefits were for a different, earlier overpayment, and the claims record showed that an overpayment against Claimant existed before she reported the January 29, 2011 through April 9, 2011 overpayment in May 2011. (*Id.* at 19-24, R.R. at 25a-30a; R. Item 1, Claim Record, R.R. at 60a.) The claims examiner further testified that Claimant could not make restitution for the $3,630 overpayment at issue here until the Department established the overpayment in 2014. (R. Item 13, H.T. at 19, R.R. at 25a.) The claims examiner testified the only factor considered by the Department in imposing 13 penalty weeks was that "the Claimant was working full-time at the time of filing for benefits." (*Id.*)

On December 18, 2014, the referee issued a decision affirming the Department's ineligibility, fault overpayment and penalty determinations. The

referee found that Claimant had filed unemployment claims for the weeks ending January 29, 2011 through April 9, 2011, while she was employed full-time, that she was ineligible for benefits for those weeks under Sections 4(u) and 401 of the Law, and that she was paid $3,630 in benefits for those weeks. (R. Item 14, Referee's Decision/Order F.F. ¶¶4, 6 & Reasoning at 2-3.) The referee concluded that the claims record showed that Claimant filed for those weeks of benefits and rejected as not credible Claimant's testimony that the claims were filed by her husband without her knowledge or consent. (*Id.* Reasoning at 2.) Based on this credibility determination, the referee found that "the claimant falsified information for the purpose of receiving benefits to which she was not entitled." (*Id.*) The referee therefore concluded that the overpayment was a fault overpayment under Section 804(a) of the Law and that the 15% penalty of $544.50 and 13 penalty weeks were properly imposed because "benefits were paid as a result of fraud." (*Id.* Reasoning at 2-3.) Although the referee specifically found that Claimant reported the overpayment in May 2011 (*id.* F.F. ¶5), the referee did not discuss this fact in upholding the imposition of 13 penalty weeks.

Claimant appealed, and on February 25, 2015, the Board issued an order affirming the referee's decision. In its Order, the Board adopted and incorporated the findings and conclusions of the referee, including the referee's credibility determination, and made no additional findings. (Record Item 19, Board Order.) Claimant filed the instant petition for review appealing the Board's order to this Court.[3]

---

[3] Our review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether errors of law were committed and whether constitutional rights were violated. *Chishko v. Unemployment Compensation Board of Review*, 934 A.2d 172, 176 n.4 (Pa. Cmwlth. 2007).

6

In this appeal, Claimant does not dispute that the Board properly affirmed the ruling that she was ineligible for benefits for the weeks ending January 29, 2011 through April 9, 2011 and that the claims filed for benefits for those weeks falsely reported her employment and earnings. Claimant also does not contend that the Board erred in affirming the amount of the overpayment and no longer contends that any of the deductions to her benefits in 2012 repaid any of the $3,630 overpayment. Claimant challenges only the Board's affirmance of the determination that the overpayment was a fault overpayment and the award of penalties, arguing that the claims were filed by her husband and that there is no evidence that she, as opposed to her husband, intentionally misled the Department to obtain those benefits. Claimant asserts in support of these arguments that she reported the overpayment and sought to repay it in 2011, more than three years before the Department assessed the overpayment.

We are not persuaded that the Board erred in upholding the fault overpayment. Section 804(a) of the Law provides that "[a]ny person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay … a sum equal to the amount so received by him …." 43 P.S. § 874(a). The word "fault," under Section 804(a), connotes an act to which blame, censure, impropriety, shortcoming, or culpability attaches. *Castello v. Unemployment Compensation Board of Review*, 86 A.3d 294, 298 (Pa. Cmwlth. 2013); *Chishko v. Unemployment Compensation Board of Review*, 934 A.2d 172, 177 (Pa. Cmwlth. 2007); *Summers v. Unemployment Compensation Board of Review*, 430 A.2d 1046, 1048 (Pa. Cmwlth. 1981). Filing a claim for unemployment compensation benefits while employed, without reporting that employment and the earnings from it, constitutes conduct designed

7

to mislead the unemployment compensation authorities and is sufficient to establish a fault overpayment. *Castello*, 86 A.3d at 298-99; *Chishko*, 934 A.2d at 177-78; *Summers*, 430 A.2d at 1048. "Truthfully divulging all pertinent information regarding one's employment status is required so the unemployment compensation authorities may make an intelligent and well-informed decision as to a claimant's eligibility for benefits and proper computation of such benefits." *Castello*, 86 A.3d at 298.

To find fault, the Board or referee must make some findings with regard the claimant's state of mind. *Castello*, 86 A.3d at 298; *Chishko*, 934 A.2d at 177; *Greenawalt v. Unemployment Compensation Board of Review*, 543 A.2d 209, 211 (Pa. Cmwlth. 1988). Admission by the claimant concerning her knowledge or conduct, however, is not required for the Board to find that the claimant acted knowingly and with intent to mislead. *Castello*, 86 A.3d at 299. Evidence from the claimant's claim record showing the filing of the claim and the failure to report any wages, coupled with evidence that the claimant received substantial wages for that time period, is sufficient by itself to permit the Board to infer and find that the claimant intentionally failed to report earnings, even where there is no other testimony or evidence as to the claimant's knowledge, actions or state of mind. *Id.* (affirming fault overpayment based on claim record, even though claimant did not appear at the hearing).

Here, the Board found that Claimant filed claims for weeks in question and knowingly failed to report that she was employed in order to obtain benefits that she was not eligible to receive. (R. Item 14, Referee's Decision/Order Reasoning at 2; Record Item 19, Board Order.) While Claimant testified that the false claims were filed by her husband, the Board found that this testimony was not

8

credible. (R. Item 14, Referee's Decision/Order Reasoning at 2-3; Record Item 19, Board Order.) Issues of credibility are for the Board, not this Court, and the Board may accept or reject a witness's testimony whether or not it is corroborated by other evidence and even if it is uncontradicted. *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1164 (Pa. Cmwlth. 2013); *Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011). Given the Board's rejection of Claimant's denial of involvement as not credible, the claim record showing that claims were filed in Claimant's name and under her Social Security number for the weeks ending January 29, 2011 through April 9, 2011, Claimant's admission that she was employed and ineligible those weeks and the evidence that benefits were paid for those weeks to her debit card constitute substantial evidence sufficient to support the Board's findings that Claimant filed the claims and intentionally misled the Department. *Castello*, 86 A.3d at 299 (claim record showing false claim filed in claimant's name constituted substantial evidence that claimant intentionally failed to report earnings and was sufficient to support fault overpayment); *see also Monserrate v. Commissioner of Labor*, 958 N.Y.S.2d 528, 529 (N.Y. App. Div. 2013) (upholding determination of willful misrepresentation to obtain unemployment benefits where agency records showed false certifications in claim filed by claimant and benefits were deposited into his account, despite claimant's contention that he did not file the certifications, which finder of fact rejected as not credible). The Board therefore did not err in concluding that Claimant's overpayment was a fault overpayment. *Castello*, 86 A.3d at 299; *Chishko*, 934 A.2d at 177-78; *Summers*, 430 A.2d at 1048.

 *Greenawalt*, relied on by Claimant, is not to the contrary. In *Greenawalt*, the evidence of the claimant's state of mind was insufficient to show

intent to mislead because the reports submitted by the claimant that underreported her earnings were prepared by her employer and there was no evidence that claimant knew that those earnings reports were inaccurate. 543 A.2d at 210-11. In contrast, in this case, Claimant does not dispute that the claims were knowingly falsely filed and that her knowledge of her employment and earnings was sufficient to support a fault overpayment. Claimant's contention that fault was not shown was based entirely on her testimony that she was not the person who filed the claims, and the Board rejected that testimony as incredible.

Claimant correctly notes that she reported the false claims for benefits to the Department in May 2011. The Board found that "[o]n May 5, 2011, the claimant contacted the Department and informed a representative that she was working full-time with [Employer] and her husband had been filing for benefits without her knowledge or consent." (R. Item 14, Referee's Decision/Order F.F. ¶5; Record Item 19, Board Order.) This finding is supported by the Department's records and its claims examiner's testimony. (R. Item 1, Claim Record, R.R. at 60a; R. Item 13, H.T. at 18, R.R. at 24a.) The fact that Claimant brought the improper benefits to the Department's attention after the fact on her own initiative, however, does not alter the fact that the overpayment was obtained by misrepresentation and is not a ground for reversing a fault overpayment. *McKean v. Unemployment Compensation Board of Review*, 94 A.3d 1110, 1114-15 (Pa. Cmwlth. 2014) (upholding fault overpayment despite fact that claimant notified Department of unreported income one month after the last overpayment).

In addition to fault overpayment, under Section 801 of the Law, a claimant who "makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase compensation" is subject to penalty

weeks disqualifying her from receiving future benefits and a penalty of 15% of the overpaid benefits that she received. 43 P.S. § 871(b),(c);[4] *Chishko*, 934 A.2d at 178. The Board's findings that Claimant's conduct constituted knowing misrepresentation and that it was done to obtain benefits that she was not eligible to receive and that she obtained the benefits by fraud (R. Item 14, Referee's Decision/Order Reasoning at 2-3; Record Item 19, Board Order), satisfy the

---

[4] Sections 801(b) and (c) provide:

> (b) Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment under this act or under an employment security law of any other state or of the Federal Government or of a foreign government, may be disqualified in addition to such week or weeks of improper payments for a penalty period of two weeks and for not more than one additional week for each such week of improper payment: Provided, That no additional weeks of disqualification shall be imposed under this section if prosecution proceedings have been instituted against the claimant because of such misrepresentation or non-disclosure. The departmental determination imposing penalty weeks under the provisions of this subsection shall be subject to appeal in the manner provided in this act for appeals from determinations of compensation. The penalty weeks herein provided for shall be imposed against any weeks with respect to which the claimant would otherwise be eligible for compensation, under the provisions of this act, which begin within the four year period following the end of the benefit year with respect to which the improper payment or payments occurred.
>
> (c) Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase compensation or other payment under this act or under an employment security law of the Federal Government and as a result receives compensation to which he is not entitled shall be liable to pay to the Unemployment Compensation Fund a sum equal to fifteen per centum (15%) of the amount of the compensation. The sum shall be collectible in the manner provided in section 308.1 or 309 of this act for the collection of past due contributions and by any other means available under Federal or State law. No administrative or legal proceeding for the collection of the sum may be instituted after the expiration of ten years following the end of the benefit year with respect to which the sum was paid.

43 P.S. § 871(b),(c).

11

requirements for imposition of these penalties. *Castello*, 86 A.3d at 299; *Chishko*, 934 A.2d at 178.

The Board therefore did not err in affirming the 15% penalty imposed by the Department. Section 801(c) provides that the 15% penalty is mandatory where the Board has found that a claimant knowingly made a false representation concerning her eligibility or knowingly failed to disclose such information to obtain benefits. 43 P.S. § 871(c) ("Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase compensation … and as a result receives compensation to which he is not entitled shall be liable to pay to the Unemployment Compensation Fund a sum equal to fifteen per centum (15%) of the amount of the compensation") (emphasis added).

Penalty weeks, however, are not automatic upon a finding of conduct sufficient to support a penalty. Section 801(b) provides that a claimant who has made knowing misrepresentations or omissions to obtain benefits "may be disqualified in addition to such week or weeks of improper payments for a penalty period of two weeks and for not more than one additional week for each such week of improper payment." 43 P.S. § 871(b) (emphasis added). Here, the Board found that Claimant reported the fraudulent claims to the Department in 2011, and Department records showed that Claimant expressed a willingness to repay the benefits in 2011, but was told to await an overpayment letter that the Department did not send. (R. Item 14, Referee's Decision/Order F.F. ¶5; Record Item 19, Board Order; R. Item 1, Claim Record, R.R. at 60a; R. Item 13, H.T. at 18-19, R.R. at 24a-25a.) While self-reporting does not preclude the imposition of penalty weeks, *McKean*, 94 A.3d at 1114-15, these facts are relevant to the seriousness of Claimant's misconduct and therefore can bear on the discretionary determination

as to whether penalty weeks are appropriate and whether the number of penalty weeks imposed should be less than maximum permitted by Section 801(b).

The Department imposed and the Board upheld the maximum number of penalty weeks permitted for this 11-week overpayment, 13 penalty weeks, with no consideration of the unusual mitigating circumstances in this case. The only reason given by the Department for its imposition of the maximum penalty weeks was that Claimant knew that she was ineligible when she filed for benefits and was therefore subject to penalty weeks. (R. Item 13, H.T. at 19, R.R. at 25a.) The referee and the Board held only that "penalty weeks" were "appropriate," and did not discuss their finding that Claimant reported the fraud to the Department in 2011 or rule on the issue whether imposition of the maximum penalty weeks was appropriate. (R. Item 14, Referee's Decision/Order Reasoning at 3; Record Item 19, Board Order.) Because the Board did not consider relevant facts established by both its findings and the record, and did not address the issue of whether the maximum penalty weeks were properly imposed, the Board's affirmance of the imposition of 13 penalty weeks must be vacated and the issue of penalty weeks must be remanded to the Board. *See Dorn v. Unemployment Compensation Board of Review*, 866 A.2d 497, 501-02 (Pa. Cmwlth. 2005) (remand required where Board failed to make necessary findings or failed to address evidence); *Kowal v. Unemployment Compensation Board of Review*, 465 A.2d 1322, 1323 (Pa. Cmwlth. 1983) (remand required where Board failed to address issue and make necessary findings).

For the foregoing reasons, we affirm the Board's order insofar as it affirmed the determination of ineligibility, the fault overpayment and the

13

imposition of a 15% penalty, but remand the issue of penalty weeks to the Board to consider whether and how many penalty weeks are appropriate.

_____

JAMES GARDNER COLINS, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Genecia L. Williams,                     :
                                         :
            Petitioner                   :
                                         :
        v.                               : No. 383 C.D. 2015
                                         :
Unemployment Compensation                :
Board of Review,                         :
                                         :
            Respondent                   :

# O R D E R

AND NOW, this 10th day of November, 2015, the order of the Unemployment Compensation Board of Review (Board) in the above-captioned matter is AFFIRMED insofar as it upheld the determinations that Petitioner was ineligible for benefits for the weeks ending January 29, 2011 through April 9, 2011, and that imposed a fault overpayment of $3,630.00 and a 15% penalty of $544.50. The order of the Board is VACATED insofar as it upheld the assessment of 13 penalty weeks. This matter is REMANDED to the Board to consider whether the imposition of the maximum penalty weeks is appropriate under the findings and evidence in this case.

Jurisdiction relinquished.

_____
JAMES GARDNER COLINS, Senior Judge