IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Douglas A. Kolcun,                          :
                        Petitioner           :
                                             :
            v.                               :
                                             :
Unemployment Compensation                    :
Board of Review,                             :     No. 2079 C.D. 2016
                        Respondent           :     Submitted: September 22, 2017


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                  FILED: November 29, 2017


            Douglas A. Kolcun (Claimant) petitions this Court, pro se, for review of
the Unemployment Compensation (UC) Board of Review's (UCBR) November 15,
2016 order affirming the Referee's decision denying him UC benefits under Section
402(e) of the UC Law (Law).[1]  The sole issue before the Court is whether the UCBR
erred by concluding that Claimant committed willful misconduct.[2]  After review, we
affirm.

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e)
(referring to willful misconduct).

[2] The UCBR also determined that Claimant received a non-fault overpayment of UC benefits,
but Claimant did not appeal from that determination.

Claimant's Statement of Questions Involved contains two issues: (1) whether the UCBR erred
by finding that there was insufficient evidence that Claimant was discharged based on an unexcused
absence; and, (2) whether the UCBR erred by concluding that Claimant committed willful
misconduct.  *See* Claimant Br. at 7.  Because the first issue is subsumed in the analysis of the second,
we have combined the issues herein.

Claimant was employed as a full-time store manager for Sofa Mart LLC (Employer) from February 4, 2008 to July 30, 2016. After several prior warnings, by July 30, 2016 letter, Employer discharged Claimant due to his unprofessional treatment of staff and failure to keep his work schedule. Claimant applied for UC benefits. On August 25, 2016, the Erie UC Service Center determined that Claimant was eligible for UC benefits. Employer appealed, and a Referee hearing was held on October 6, 2016. On October 7, 2016, the Referee reversed the UC Service Center's determination, thereby denying Claimant UC benefits due to his willful misconduct. Claimant appealed to the UCBR. On November 15, 2016, the UCBR adopted the Referee's findings and conclusions, and affirmed the Referee's decision. Claimant appealed to this Court.[3]

Initially,

Section 402(e) of the Law provides that an employee is ineligible for [UC] benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in an unemployment compensation case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

---

[3] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

On November 30, 2016, Claimant requested reconsideration which the UCBR denied on December 16, 2016. However, pursuant to Pennsylvania Rules of Appellate Procedure 1512(a)(1) and 1701(b)(3), and Section 35.241(e) of the General Rules of Administrative Procedure, 1 Pa. Code § 35.241(e), once the 30-day appeal period expired on December 15, 2016, the UCBR no longer had jurisdiction to decide reconsideration.

*Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747 n.4 (Pa. Cmwlth. 2000) (citation omitted). "If the employer satisfies its burden, the burden shifts to the employee to show that [s]he . . . had good cause for h[er] . . . conduct. 'A claimant has good cause if h[er] . . . actions are justifiable and reasonable under the circumstances.'" *Grand Sport Auto Body v. Unemployment Comp. Bd. of Review*, 55 A.3d 186, 190 (Pa. Cmwlth. 2012) (citation omitted; quoting *Docherty v. Unemployment Comp. Bd. of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006)). Ultimately, "[t]he question of whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Scott v. Unemployment Comp. Bd. of Review*, 105 A.3d 839, 844 (Pa. Cmwlth. 2014).

> The law is well- established that:
>
> [T]he [UCBR] is the ultimate fact-finder in [UC] matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.[4]

*Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted).

---

[4] This Court has explained:

> Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

3

In the instant case, Claimant argues that Employer failed to prove that his discharge was due to willful misconduct. He specifically contends he "was not discharged due to neglect of his store manager duties," Claimant Br. at 10, and Employer's claim that his discharge for failing to report to work as scheduled was not raised until after the UC Service Center awarded him benefits. We disagree.

At the Referee hearing, Employer's Regional Sales Manager and Claimant's supervisor Thurman Martin (Martin) declared that Claimant created the store schedule, and was required to work 42 to 50 hours per week.[5] He expressed that since the staff works on commission, it was crucial for management to set an example and create a positive environment in the store. Martin recalled that, during a store visit on July 29, 2016, he learned from a staff member that Claimant had been arriving late to work and leaving early, and that Claimant was hostile and belittling to the staff. As a result, Martin interviewed the entire staff, reviewed Claimant's work schedules and contacted Employer's legal department.

---

[5] Martin clarified that Claimant's work schedule is based

> on a seven[-]day work week, the store opens at 10:00. [Claimant] is . . . required to be there at 9:00. [Claimant is] required to work two and a half days on the front end, and then [is] also required to work the weekend. So [Claimant's] average hours are anywhere from 42 to -- up to 50 hours a week, based on the store, and based on the amount of managers in the store, which in [Claimant's] location [was] three managers, two that reported to [Claimant].
>
> . . . .
>
> At least a 42[-]hour work week is the minimum requirement. . . . [A] 40[-]hour work week is required based on [Claimant's] override.
>
> . . . .
>
> Based on the commissions of the store, and if [Claimant doesn't] work a 40[-]hour work week[, he] won't get [his] (inaudible). . . .

Certified Record Item 9, Notes of Testimony, October 6, 2016 (N.T.) at 11-12.

Martin recounted that Claimant had received several prior warnings related to his treatment of staff and his work schedule, and that Claimant was on notice that if he failed to correct his behavior, his job would be in jeopardy. Martin articulated that Claimant's weekly work hours averaged 32.5 in October 2015, 32.87 in November 2015, 22.43 in December 2015, and 33.35 in January 2016. Martin described that, after Claimant was warned, his behavior would improve "just a little bit, and then [] went right back to the other issues that we had . . . at the beginning when we discussed what he had to change." Certified Record (C.R.) Item 9, Notes of Testimony, October 6, 2016 (N.T.), at 8.

The Referee admitted into the record the Employee Action Notices issued to Claimant. Two were issued on March 26, 2015; one for his mishandling of a personal purchase, and one for creating a negative work environment by not contributing to staff training, boasting, hijacking sales, and by being argumentative and belittling to staff members. *See* N.T. Exs. 12, 14. The latter notice stated: "If immediate improvement is not made . . . [,] further disciplinary action will be taken leading up to your immediate dismissal[.]" N.T. Ex. 12. Claimant's December 27, 2015 notice was issued for Claimant's improper handling of bank deposits. Claimant was warned on March 31, 2016 regarding his failure to work as scheduled in October, November and December 2015 and in January and February 2016. *See* N.T. Ex 11. The March 31, 2016 warning read:

> On February 12, you stated that the reason that you missed work [was] because [] you were not feeling well and that you were helping a friend recover from rehabilitation. You were asked if you had documentation for the times that you went to the doctors. On February 17, 2016, you emailed that you only went to the doctor twice and didn't know if you saved any paperwork. As of March 31st, you still have not provided any paperwork.
>
> This is unacceptable and was not approved by [Martin]. Future failures on your part not to work less than 45 hours

[sic] in a calendar work week or take off time without approval will result in your immediate dismissal from [Employer].

N.T. Ex. 11. Martin recalled discussing Claimant's attendance again on April 30, 2016. Martin reported that Claimant continued to work less than his required hours and not work as scheduled. Martin specifically related that Claimant arrived 1½ hours late on July 16, 2016, and he called off work July 20, 2016 without Martin's approval.

Martin acknowledged that, as store manager, Claimant was responsible for holding the staff accountable for training and attendance, which he could not do if he was not also in compliance. Martin stated that Claimant ultimately "was discharged for not working his scheduled hours, and . . . because [Employer] lost the confidence in [his] leadership[ - his ability] to lead the staff members and the store." N.T. at 6.

The Referee also admitted into the record Employer's July 30, 2016 Termination Notice, wherein, Employer stated:

> During the course of your tenure as a store manager, I have counseled you on numerous occasions both orally and in writing regarding your failure to perform effectively as a manager. Specifically, I have counseled you regarding your leadership skills, your negative attitude toward your staff and your failure to follow the schedule.
>
> During my recent interviews with the staff, they complained that among other things you created a negative work environment in your store and that you demean them and are not fair with your decisions.
>
> Additionally, after reviewing your schedule, you continue to disregard it. On July 25, 2016, for example, you did not work your scheduled shift. In the months of May, June and July, you also have been late for your shifts from one to three hours seven times.
>
> I have met with you several times and provided you guidance as to how to create a positive environment in your store by treating your staff with dignity and respect. I also have discussed with you the importance of following the schedule.

6

> Additionally, I have provided you guidance as to how to be a team player and to properly motivate your employees.
>
> Notwithstanding my repeated counseling, you have demonstrated either an unwillingness or an inability to correct your behavior. . . .
>
> We have lost confidence in you as a store manager. Your employment with [Employer] is therefore terminated, effective immediately.

N.T. Ex. 10.

Claimant admitted that he received prior warnings about his poor leadership and work hours. He explained that he improved the behaviors about which he was counseled to the best of his ability. Specifically, regarding his work hours, Claimant represented:

> [W]e have the authority, as long as we're working those 40 hours and the store is covered, to -- if we have an issue. Unfortunately I had quite a few issues with my family and so, you know, I did come in late, but I did maintain those 40 hours after I was written up by [Martin].

N.T. at 13. Claimant asserted that his discharge was not due to his work hours, but because "[Employer] lost confidence in [Claimant's] ability to lead; that [Claimant] had a confrontation with a staff member; and that [Claimant] was demeaning." N.T. at 6.

The UCBR adopted the Referee's findings that Claimant had been counseled regarding his leadership skills and failure to work according to his schedule. On March 31, 2016, Claimant was warned that continued failure to work less than a full week and/or taking unauthorized time off would result in his discharge; however, Martin received additional complaints about Claimant's behavior, and discovered that

7

Claimant had been late to work at least seven times, was 1½ hours late on July 16, 2016, and did not work as scheduled on July 20, 2016.[6]

The UCBR adopted the Referee's conclusion that since only uncorroborated hearsay evidence supported Employer's claim that Claimant persistently created a negative work environment, Employer failed to establish by substantial evidence that Claimant's discharge was based on willful misconduct related thereto. However, the UCBR also adopted the Referee's determination that Employer met its burden of proving that despite prior warnings, Claimant continued to disregard his work schedule, and Claimant failed to prove that his actions were justifiable or reasonable for failing to follow a known, reasonable directive under the circumstances.[7] Finally, the UCBR held that since the reasons Employer offered for Claimant's discharge included Claimant's failure to follow his work schedule, Claimant was ineligible for UC benefits due to his willful misconduct.

This Court has held:

> It is well-settled that an employer has the right to expect that its employees will attend work when they are scheduled and that they will be on time; habitual tardiness is behavior that is 'inimical to an employer's interest.' *Fritz v. Unemployment Comp*[.] *B*[*d.*] *of Review, . . .* 446 A.2d 330, 333 ([Pa. Cmwlth.] 1982).
>
> 'A conclusion that the employee has engaged in disqualifying willful misconduct is especially warranted in . . . cases where . . . the employee has been warned and/or reprimanded for prior similar conduct' *Dep*[*'*]*t of Transp*[.]

---

[6] Although the Referee's decision states that Claimant "did not work as scheduled [] on July 25, 2016," the record reflects that Martin approved Claimant's July 25, 2016 absence, but that Claimant called off from work on July 20, 2016 without Martin's approval. *See* Referee Dec. at 2; *see also* N.T. at 12. The UCBR expressly found credible Employer's testimony that Claimant was late on July 16, 2016 without prior authorization.

[7] Claimant attached medical records to his reconsideration request. As a matter of law, the UCBR and this Court are prohibited from considering extra-record evidence on appeal. *See* 34 Pa. Code § 101.106; *Umedman v. Unemployment Comp. Bd. of Review*, 52 A.3d 558 (Pa. Cmwlth. 2012). Accordingly, this Court did not consider those records herein.

8

*v. Unemployment Comp*[.] *B*[*d.*] *of Review* [], . . . 479 A.2d 57, 58 ([Pa. Cmwlth.] 1984). 'We have consistently held that chronic tardiness, particularly after a warning, exhibits a sufficient disregard of the employer's interests to constitute willful misconduct.' *Conibear v. Unemployment Comp*[.] *B*[*d.*] *of Review,* . . . 463 A.2d 1231, 1232 ([Pa. Cmwlth.] 1983).

*Ellis v. Unemployment Comp. Bd. of Review*, 59 A.3d 1159, 1163 (Pa. Cmwlth. 2013).

Moreover,

[t]he issue of whether good cause exists is a factual one for the [UCBR] to resolve. *Wideman v. Unemployment Comp*[.] *B*[*d.*] *of Review,* . . . 505 A.2d 364, 368 ([Pa. Cmwlth.] 1986). 'The [UCBR], as ultimate fact finder, determines the weight and credibility of the evidence and is free to reject even uncontradicted testimony.' *Id.* Here, the [UCBR] adopted the [R]eferee's finding that Claimant's testimony . . . was insufficient to establish good cause. It was within the exclusive province of the [UCBR] to make this finding and Claimant cannot impugn it on appeal.

*Ellis*, 59 A.3d at 1164.

Viewing the evidence in the light most favorable to Employer, as we must, we hold that the UCBR properly concluded that Claimant committed willful misconduct and, thus, he is ineligible for UC benefits under Section 402(e) of the Law.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

9

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Douglas A. Kolcun,           :
               Petitioner    :
                           :
        v.                   :
                           :
Unemployment Compensation  :
Board of Review,            :    No. 2079 C.D. 2016
              Respondent  :

## O R D E R

AND NOW, this 29th day of November, 2017, the Unemployment Compensation Board of Review's November 15, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge