# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marsha R. Davis,                                  :
                        Petitioner                :
                                                  :   No.  818 C.D. 2018
            v.                                    :
                                                  :   Submitted:  May 24, 2019
Unemployment Compensation                         :
Board of Review,                                  :
                        Respondent                :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                               FILED:  July 26, 2019

            Marsha R. Davis (Claimant) petitions for review from the May 24, 2018 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision finding that she was ineligible for unemployment compensation benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). In relevant part, section 402(e) states that an employee shall be ineligible for compensation for any week in which her unemployment is due to willful misconduct connected with her work.

Willful misconduct, though not delineated in the Law, has been defined by the courts of this Commonwealth as:  (1) a wanton and willful disregard of the employer's interests; (2) a deliberate violation of the employer's rules; (3) a disregard of the standards of behavior that an employer rightfully can expect from its employees; or (4) negligence that manifests culpability, wrongful intent, or evil design, or an intentional and substantial disregard of the employer's interests or the

**(Footnote continued on next page…)**

From March 27, 2017, to September 22, 2017, Claimant was employed by Voca Corporation of New Jersey (Employer) as a Direct Support Professional. Employer terminated Claimant for a verbal incident that occurred with a coworker on September 17, 2017, and for conduct that she committed when she conversed with her manager on September 22, 2017. Claimant applied for unemployment compensation (UC) benefits with Erie UC Service Center (UC Service Center). On November 11, 2017, the UC Service Center determined that she did not commit willful misconduct under section 402(e) of the Law and, thus, granted her benefits.

Employer appealed, requesting a hearing before a referee. Subsequently, on January 19, 2018, the referee conducted a hearing via telephone at which Claimant testified. Employer presented the testimony of two witnesses, Kolaeeole Rasheed, Employer's Clinical Supervisor, and Kenny Adebowale, Employer's Reservation Manager.

After concluding the hearing, the referee issued the following pertinent findings of fact:

> 2. [Employer's] policy prohibits fighting or otherwise disrespectful conduct, and [Claimant] was aware of the policy.
>
> 3. [Employer] had warned [Claimant] that she was to accept the decisions of her supervisor and not use the chain of command to question those decisions.
>
> 4. On 9/17/17, [Claimant's] coworker attempted to start an argument with [Claimant], but [Claimant] did not argue with her.

---

**(continued…)**

employee's duties and obligations. *Oliver v. Unemployment Compensation Board of Review*, 5 A.3d 432, 438 (Pa. Cmwlth. 2010).

5. [Claimant] had requested 9/22/17 off in advance, and the request was granted, and [Claimant's] manager arranged for another employee to cover [Claimant's] shift.

6. On 9/22/17, [Claimant] called [Adebowale,] her supervisor[,] and informed [Adebowale] that she might want to work, as her ride had not shown up yet and she might be available after all.

7. [Adebowale] attempted to tell [Claimant] that the shift was already covered, and that she could not keep the shift open while waiting to see if [Claimant] was going to come in or not.

8. [Claimant] became upset, raised her voice, argued with the manager, and hung up on [Adebowale].

9. [Claimant] called her supervisor's boss, the clinical manager [i.e., Rasheed], but only got his voice mail.

10. [Claimant] called [Adebowale] back to request the phone number of [Rasheed's] supervisor.

11. [Adebowale] refused to give [Claimant] the phone number, so [Claimant] again argued with her manager, and hung up on her again.

12. [Claimant] was discharged for arguing with a coworker on 9/17/17 and unprofessional and disrespectful conduct on 9/22/17.

(Findings of Fact (F.F.) Nos. 2-12.)

In concluding that Claimant committed willful misconduct, the referee reasoned as follows:

> [Employer] has not established that [Claimant] argued with a coworker on 9/17/17. Neither of [Employer's] witnesses saw or heard the alleged fight, and [Claimant] denies that one occurred. However, [Employer] did establish that [Claimant] acted disrespectfully and unprofessionally towards her manager on 9/22/17. [Claimant] argued with

3

her manager, attempted to go over her in the chain of command, and hung up on her manager twice. [Claimant's] conduct violated [Employer's] policy, and [Claimant] had no adequate justification for her conduct. Accordingly, [Claimant] is ineligible for benefits under [s]ection 402(e) of the Law.

(Referee's decision at 3.)

Claimant appealed to the Board. By decision and order dated May 24, 2018, the Board affirmed, adopting and incorporating the referee's findings and conclusions as its own.

Before this Court,[2] Claimant argues that finding of fact number 4 "is in direct conflict with" finding number 12 because the Board determined that her behavior on September 17, 2017, did not rise to the level of willful misconduct and Employer terminated her for this reason. (Claimant's brief at 11.)

Upon review, we discern no incompatibility between the two findings. Here, Employer terminated Claimant for two independent and separate violations of its policy. (Notes of Testimony (N.T.) at 3-4; F.F. No. 12.) While the Board determined that Employer failed to establish that Claimant committed willful misconduct on September 17, 2017, the Board also determined that Claimant committed willful misconduct on September 22, 2017. It is settled law that "a claimant who has been discharged for multiple reasons is disqualified from receiving benefits even if only one of those reasons amounts to willful misconduct." *Glenn v. Unemployment Compensation Board of Review*, 928 A.2d 1169, 1172 (Pa. Cmwlth. 2007). Consequently, Claimant's argument lacks merit.

---

[2] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether findings of fact are supported by substantial evidence. *Hollingsworth v. Unemployment Compensation Board of Review*, 189 A.3d 1109, 1112 n.5 (Pa. Cmwlth. 2018).

Claimant next contends that the evidence was insufficient to establish that she committed willful misconduct and violated Employer's policy on September 22, 2017, by being disrespectful or argumentative with her supervisors.

The employer has the burden of proving that it discharged an employee/claimant for willful misconduct. *Owens v. Unemployment Compensation Board of Review*, 748 A.2d 794, 797 (Pa. Cmwlth. 2000). In *Farag v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1902 C.D. 2013, filed April 25, 2014) (unreported),[3] the employer had a policy that, *inter alia*, required employees to be respectful to their supervisors, and the employer terminated the claimant/employee for an incident where she "became agitated and disrespectful to her supervisors." *Id.*, slip op. at 2. In that case, the claimant asked her supervisor "if she could take over the shift of another employee . . . who had recently tendered her resignation." *Id.* After the supervisor informed the claimant that the employer was going to eliminate the position due to budget constraints, the claimant, in a very loud manner, stated "but I have seniority." *Id.* During a subsequent meeting with the supervisor, the claimant became "irritated," "angry," "very insubordinate," and was "yelling in the office." *Id.* at 2-3. Although the claimant never used offensive, vulgar, or threatening language, the Court in *Farag* concluded that she engaged in willful misconduct.[4]

---

[3] We cite *Farag* for its persuasive value. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

[4] As a general matter, on one hand, an employee's use of abusive, offensive, or vulgar language toward a supervisor is a form of insubordination that may constitute willful misconduct; this is true even if the employer has not adopted a specific work rule prohibiting such language and even if there is only a single instance in which such language is used. *See, e.g., Brown v. Unemployment Compensation Board of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012); *Leone v. Unemployment Compensation Board of Review*, 885 A.2d 76, 81 (Pa. Cmwlth. 2005); *Viglino v.*
**(Footnote continued on next page…)**

Here, Employer's policy prohibits "abusive, disrespectful, or threatening conduct or speech towards any individuals of staff, fellow employees, Supervisor staff, vendors, and visitors." (N.T. at 6.) Concerning the incident that the Board found to have constituted willful misconduct, Adebowale testified that Claimant requested and received permission to be off from work on September 22, 2017. (N.T. at 9-10.) Adebowale testified that on September 22, 2017, Claimant called hher and stated that she may not need to take the day off and inquired into the possibility of whether she could work. (N.T. at 9, 15.) Adebowale informed Claimant that the shift was filled and that she would have to take the day off. (N.T. at 9.) Adebowale said that, upon receiving this information, Claimant became distraught. Specifically, Claimant started "screaming and yelling," and was "very unprofessional on the phone," "speaking . . . in an angry tone." (N.T. at 6, 10, 13.) Claimant herself testified that she then told Adebowale that she, Claimant, "will not be disrespected," "will end this call," and "that's what [she] did." (N.T. at 16.) According to Adebowale and Rasheed, Claimant, after seeking to contact Rasheed (Adebowale's

---

**(continued…)**

*Unemployment Compensation Board of Review*, 525 A.2d 450, 453 (Pa. Cmwlth. 1987); *Dodson v. Unemployment Compensation Board of Review*, 437 A.2d 1080, 1082 (Pa. Cmwlth. 1981). On the other hand, unnecessary and defiant debate with a supervisor over a reasonable directive may also constitute insubordination and, thus, willful misconduct. *See Strong v. Unemployment Compensation Board of Review*, 459 A.2d 57, 59 (Pa. Cmwlth. 1983); *see also Isabella v. Unemployment Compensation Board of Review*, 429 A.2d 1220, 1222-23 (Pa. Cmwth. 1980).

Conceptually, this case and *Farag* represent an offshoot of these two doctrines. Broadly speaking, this case and *Farag* may be viewed as standing for the proposition that an employee's verbal reaction to an unfavorable decision of a supervisor, when considered in terms of its tone and manner of conveyance, may be sufficiently combative and irascible that it is abusive in its form and context and without regard to its content.

supervisor) to contest the decision of Adebowale, called Adebowale back, continued her outburst, and hung up on her once again. (N.T. at 12, 14, 16-18.)

Viewing this evidence in the light most favorable to Employer, *see Gibson v. Unemployment Compensation Board of Review*, 760 A.2d 492, 494 (Pa. Cmwlth. 2000), we conclude that Claimant engaged in willful misconduct. As found by the Board, Claimant committed conduct that was substantially similar to—and materially indistinguishable from—that of the claimant in *Farag*.[5] Therefore, Claimant's argument to the contrary fails.

Finally, Claimant asserts that she acted in a professional and polite manner and that Adebowale instigated the situation and is the one who acted in a disrespectful manner. However, while Claimant offered testimony to this effect, our precedent is clear that "the fact that a claimant may have given a different version of events . . . is not grounds for reversal if substantial evidence supports the Board's findings." *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1164 n.4 (Pa. Cmwlth. 2013); *see Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 610 (Pa. Cmwlth. 2011). Having determined that the Board's relevant findings are supported by the requisite amount of evidence, we conclude that Claimant's contention does not merit relief.

---

[5] We note that during the hearing, Adebowale and Rasheed testified that prior to the incidents at issue, Employer warned Claimant that she was to be respectful when conversing with fellow employees and supervisors and to stay within the chain of command; Claimant received "coaching" sessions for these issues; and in June 2017, Claimant "received a fourth coaching on professionalism and verbal argument." (N.T. at 6-8.) Under the Law, "[a] conclusion that the employee has engaged in disqualifying willful misconduct is especially warranted in . . . cases where . . . the employee has been warned and/or reprimanded for prior similar conduct." *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1163 (Pa. Cmwlth. 2013); *see Allen v. Unemployment Compensation Board of Review*, 638 A.2d 448, 450 (Pa. Cmwlth. 1994); *Jarema v. Unemployment Compensation Board of Review*, 173 A.2d 698, 699 (Pa. Super. 1961).

Accordingly, we affirm the Board's order.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marsha R. Davis,                 :
           Petitioner        :
                               :    No.  818 C.D. 2018
         v.                  :
                               :
Unemployment Compensation  :
Board of Review,           :
           Respondent     :

## ***ORDER***

AND NOW, this 26th day of July, 2019, the order of the Unemployment Compensation Board of Review, dated May 24, 2018, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge