# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wendy Glazewski,             :
             Petitioner    :
                             :
           v.          :  No. 822 C.D. 2016
                             :  Submitted: September 2, 2016
Unemployment Compensation  :
Board of Review,           :
            Respondent  :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**          **FILED: December 28, 2016**

Wendy Glazewski (Claimant) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) affirming a UC Referee's (Referee) Decision finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law (Law).[1]  On appeal,[2] Claimant argues that the

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e).  Section 402(e) provides that an employee is ineligible for UC benefits if "h[er] unemployment is due to h[er] discharge or temporary suspension from work for willful misconduct connected with h[er] work." Id.

[2] Claimant's brief is somewhat difficult to follow.  For example, there are no headings or sections within her Argument section that correspond to her Statement of Questions Involved. Nevertheless, we have read through Claimant's brief, and have tried to address the arguments that Claimant raises.

Board erred in finding her ineligible because: (1) Commercial Acceptance Company (Employer) did not satisfy its burden of proving willful misconduct because her actions did not amount to insubordination, or willful misconduct; (2) even if Claimant did violate Employer's reasonable directive, she had good cause for doing so; and (3) the Board erred in finding Claimant ineligible for benefits. Because we conclude that Claimant has not established good cause for not complying with Employer's reasonable directive, we affirm.

Claimant was employed by Employer as a full-time bookkeeper from March 23, 2015 until February 15, 2016. Claimant filed an internet claim for UC benefits on February 16, 2016, stating that she was discharged for violating Employer's work rule to "not . . . communicate with the collection staff." (Internet Initial Claims, R. Item 2.) Claimant stated that she took over the duties of the Vice President of Employer, which included enforcing rules regarding bonuses for collectors. (Id.) Claimant explained that once she started enforcing the rules, the collectors became very hostile towards her, and it made her job very difficult. (Id.) As a result, Claimant stated that on February 15, 2016, she wrote a 3-page letter "asking the collectors to highlight or note things that would save [her] time and extra work due to things being overlooked[,]" and the next day, she was fired. (Id.) Claimant asserted that Employer's "special rule" to no longer communicate with the collection staff applied only to her and was not uniformly enforced against any other employee in the company. (Claimant Questionnaire, R. Item 2.)

Employer responded to Claimant's claim for UC benefits stating that Claimant was discharged for insubordination and her "[r]efusal to follow instruction. After numerous warnings . . . [C]laimant continued to circumvent management and write degrading notes [and] letters to co-workers[.]" (Employer

2

Questionnaire, R. Item 3.) Employer attached an email dated November 6, 2015, from Employer's President, Carl Succa, to Claimant directing her to discontinue writing notes to the collection staff, the 3-page letter and two other letters written by Claimant to her co-workers, the "Disciplinary Action" section of Employer's handbook listing insubordination as an example of misconduct that may lead to disciplinary action up to and including termination, and Employer's "Conflict Resolution Procedures" indicating that Claimant read Employer's personnel policies and employee handbook and signed those documents on March 23, 2015. (Id.) In response to the UC Service Center's oral interview question asking Claimant why she sent the 3-page letter after being instructed not to do so, Claimant responded that she went to Employer's President, Vice President of Administration, and the Collections Manager on numerous occasions to tell them about the collectors' continued failure to do their jobs without error. (Record of Oral Interview, R. Item 4.)

The UC Service Center issued a Notice of Determination on March 7, 2016, finding Claimant ineligible for benefits pursuant to Section 402(e) of the Law. (Notice of Determination, R. Item 5.) The UC Service Center determined that "Claimant was discharged for insubordination" for "sending a note to the collectors with instructions and complaints." (Id.) Thus, Claimant's actions constituted willful misconduct, and "Claimant [did] not show[] good cause for her actions." (Id.) Accordingly, the UC Service Center concluded that Claimant was ineligible for benefits beginning with the waiting week ending February 20, 2016. (Id.)

Claimant appealed to the Referee asserting that Employer's work rule was unreasonable and that she had good cause for violating it. (Petition for Appeal, R. Item 6.) A hearing on Claimant's appeal was held before the Referee on March 30,

2016. (Notice of Hearing, R. Item 9.) Employer appeared with its Tax Consultant Representative (Tax Consultant), one witness, Employer's President (President), and an observer. Claimant appeared on her own behalf.

Claimant testified that President told her numerous times that her pointing out the errors of the collection staff hurt their feelings and affected their morale. (Hr'g Tr. at 12, R. Item 10.) Claimant explained that President told her to stop writing on the collection forms, so she started writing on post-its and then she wrote the two other letters and the 3-page letter. (Id.) Claimant admitted that her Employer told her not to write the letters, and further that her writing of the 3-page letter was a violation of Employer's directive. (Id. at 12, 16.) Claimant stated that she wrote the 3-page letter only after complaining about the collection staff's errors to her supervisors, including President, numerous times a day, but the errors persisted and increased in number. (Id. at 13.) Claimant testified that her workload increased significantly during tax season and that she needed the help of the collection staff to avoid making errors. (Id.) Claimant noted that she did not have permission to write the letter. (Id. at 14.)

Claimant further testified that she was tasked with enforcing collection staff rules and that her only recourse in dealing with the errors was to mark them as "replacements," which affected the collectors' bonuses. (Id. at 14, 17.) She stated that the rules were not enforced by her predecessor despite her being told the rules had been enforced, and as a result of her enforcement of the rules, the collection staff started acting nasty and hostile towards Claimant and she experienced "extreme mental anxiety" because of the tension. (Id. at 14-15.) Claimant stated that she reported such treatment by the collection staff many times, but nothing was ever done about the way she was being treated. (Id. at 15.) Claimant

4

explained that she followed the conflict resolution procedures in the handbook in reporting what was happening, but she "was left not knowing what else to do when [she] did everything according to the handbook." (Id.) Claimant testified that she did not have President review the 3-page letter before she distributed it because it was clear that "he did not have my back, that he had the collectors' back." (Id. at 16.) Claimant stated that after the September 15, 2015 memo written by President was distributed, which outlined policy changes and clarifications for all staff members, the "collectors continued on a daily basis . . . to make the same errors and omissions without any consequence." (Id. at 19; Employer Ex. 1.)

President testified that Claimant "violate[d] a previous instruction" when she wrote the 3-page letter and gave it to the collection staff. (Hr'g Tr. at 6.) President stated that Claimant "reviewed and signed the employee handbook upon the beginning of her employment in March of 2015" and that she was, thus, aware of the work rule indicating that insubordination may result in discipline up to and including termination. (Id.) President explained that Claimant's action in writing the 3-page letter and giving it to approximately 20 co-workers was insubordination under Employer's policy because she was instructed multiple times regarding her communication with staff over the course of several months. (Id. at 7, 9.) President also noted that Claimant does not have any management authority over the collection staff. President indicated that the problem with Claimant's notes were that "they were often derogatory in tone and they were a negative influence on the morale of the entire staff." (Id.)

President testified about the September memo he wrote to the collection staff, with Claimant's assistance, explaining how errors would be handled and updating Employer's previous error policy. (Id.; Employer Ex. 1.) President

5

stated that Claimant kept sending notes and letters to the staff after he issued the September memo. (Hr'g Tr. at 8.) According to President, in November 2015, he took it upon himself to "send [Claimant] an email specifically asking her not to write notes of any kind to the collection staff." (Id. at 9.) Despite President's instructions, President testified that Claimant gave the "angry and condescending" letter to her co-workers on February 15, 2016 anyway, and he did not find out about it until he was confronted "by a number of disgruntled collection staff" later that evening. (Id. at 10.)

Based on the parties' testimony, the Referee found that Claimant "deliberately violated the [E]mployer's [insubordination] policy and disregarded the standards of behavior which . . . [E]mployer ha[d] a right [to] expect of an employee." (Referee Decision at 2.) The Referee concluded that because Claimant was not given permission to write or distribute the letter to the collection staff, Claimant did not establish good cause for her conduct. (Id. at 3.) Accordingly, the Referee affirmed the UC Service Center's determination and concluded that Claimant was ineligible for benefits under Section 402(e) of the Law. (Id.) Claimant appealed to the Board.

In her appeal to the Board, Claimant argued she was not afforded the opportunity to present all of her testimony or to explain relevant evidence that proved that she had good cause for writing the 3-page letter that caused her termination. (Petition for Appeal to the Board, R. Item 12.) Claimant requested a remand hearing in order for her to re-present her testimony and evidence. (Id.)

The Board affirmed the Referee's Decision, but made its own findings of fact:

1. The claimant was last employed as a full-time bookkeeper by Commercial Acceptance Co. from March 23, 2015, until February 15, 2016, at a final rate of $18.00 per hour.

2. The employer is a collection agency.

3. The employer's handbook states that insubordination is subject to discipline up to and including termination.

4. The claimant was aware of this rule.

5. As the bookkeeper, the claimant was tasked with documenting errors the collection staff made on forms.

6. Certain errors could affect the collection staff members' bonuses.

7. The bookkeeper did not have management authority over the collections staff.

8. After the bookkeeper issued several condescending memos to the collections staff regarding alleged errors, the president issued a memo addressing the entire staff.

9. The memo, dated September 15, 2015, outlined how errors should be tracked and various policies related to errors and forms.

10. The president directed the claimant to stop writing notes of any kind to the collection staff.

11. The claimant began writing notes on post-it notes and giving them to the collectors.

12. On November 6, 2015, the president had a meeting with the claimant. The president directed the claimant to stop writing notes to the collections staff.

13. The president later sent the claimant an e-mail memorializing their conversation and reiterating the fact that the claimant should discontinue writing any and all notes to the collections staff.

14. On February 15, 2016, the claimant wrote a three page letter to the collections staff. The letter stated, in part, "[w]hen you consistently cost me time and extra work, I am not only hesitant to overlook your

simple mistakes, I am actually combing over your forms for every possible way to cost you bonus money to make up for the extra time and work you cost me."

15. The claimant printed the letter and left a copy in each collection staff member's mailbox.

16. The claimant did not have permission to issue the letter.

17. On February 16, 2016, the employer discharged the claimant for insubordination.

(Board Decision at 3; Findings of Fact (FOF) ¶¶ 1-17.) The Board denied Claimant's request for a remand hearing, stating that Claimant had the opportunity to present evidence, testify, and cross-examine Employer's witness, all of which she did. (Board Decision at 2.) The Board also noted that Claimant "was advised of her rights, indicated that she understood her rights, and received a full and fair hearing." (Id. at 3; see Hr'g Tr. at 2.)

The Board determined that Claimant was terminated for insubordination pursuant to Employer's Disciplinary Policy, of which she was aware, due to her repeated failure to follow Employer's directives to stop writing any and all notes to the collection staff. (Board Decision at 3.) With respect to whether Claimant had good cause for her actions, the Board found that "[C]laimant's dissatisfaction with . . . [E]mployer's reaction or enforcement of the error policy was not good cause for her insubordination." (Id. at 4.) Thus, the Board concluded that Claimant is ineligible for benefits under Section 402(e) of the Law. (Id., Conclusion of Law; Board Order.) Claimant now petitions this Court for review of the Board's Order.[3]

_____

[3] This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). The Board is the factfinder in UC cases and is, thus,
*(Continued…)*

8

On appeal, Claimant argues, generally, that her action in writing the 3-page letter was not insubordination, and thus was not willful misconduct, because she was not aware of the policy regarding insubordination, she was not warned of the policy, and she was not warned of the consequences of insubordination. (Claimant's Br. at 10.) In the alternative, Claimant argues that she had good cause for violating Employer's policy. Claimant also argues that the Board erred in denying her request for a remand hearing. In response, the Board argues that substantial evidence supports the Board's findings of fact, which are conclusive on appeal, and the Board properly concluded that Claimant committed willful misconduct and that she did not have good cause for her actions.

Section 402(e) of the UC Law provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which h[er] unemployment is due to h[er] discharge or temporary suspension from work for willful misconduct connected with h[er] work." 43 P.S. § 802(e). While the Law does not define "willful misconduct," our Court has defined it as:

> (1) a wanton or willful disregard for an employer's interests; (2) a deliberate violation of an employer's rules; (3) a disregard for standards of behavior which an employer can rightfully expect of an

empowered to make credibility determinations and resolve conflicts in the evidence presented. Curran v. Unemployment Comp. Bd. of Review, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). The Board's findings are conclusive on appeal if the record, as a whole, is supported by substantial evidence. Mathis v. Unemployment Comp. Bd. of Review, 64 A.3d 293, 299 (Pa. Cmwlth. 2013). We view the record in the light most favorable to the party that prevailed before the Board, and we afford that party the benefit of all reasonable inferences that can be drawn from the evidence to determine if substantial evidence exists. Big Mountain Imaging v. Unemployment Comp. Bd. of Review, 48 A.3d 492, 494-95 (Pa. Cmwlth. 2012). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a conclusion." Am. Gen. Life and Accident Ins. Co. v. Unemployment Comp. Bd. of Review, 648 A.2d 1245, 1248 (Pa. Cmwlth. 1994).

9

employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

Phila. Parking Auth. v. Unemployment Comp. Bd. of Review, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). The employer bears the burden of proving a claimant's willful misconduct. Spirnak v. Unemployment Comp. Bd. of Review, 557 A.2d 451, 453 (Pa. Cmwlth. 1989). Where an employer alleges willful misconduct based on a claimant's violation of a work rule or policy, the employer must prove the existence of the rule, the reasonableness of the rule, and that the claimant violated the rule. Ellis v. Unemployment Comp. Bd. of Review, 59 A.3d 1159, 1162 (Pa. Cmwlth. 2013). If an employer makes a showing of willful misconduct, the burden shifts to the employee to establish good cause for his or her actions. Phila. Parking Auth., 1 A.3d at 968. Whether a claimant has good cause for his or her conduct is a question of law subject to our review and must be viewed in light of all of the attendant circumstances, "including the reasons for his or her noncompliance with the employer's directives." Id.; see also Docherty v. Unemployment Comp. Bd. of Review, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006). A claimant has good cause if his or her actions are justifiable or reasonable under the circumstances. Docherty, 898 A.2d at 1208-09.

We begin by addressing Claimant's assertion that she did not get the opportunity to present all of her testimony and evidence at the Referee hearing.[4] Claimant does not raise this as a specific question, but she does mention it in the Argument section of her brief, and she previously raised it when she asked the

---

[4] On June 14, 2016, Claimant filed an Application for Relief requesting that certain documents be added to the record, which this Court denied without prejudice to allow Claimant to argue in her brief why she was unable to introduce the documents at the Referee hearing via order dated June 30, 2016.

10

Board for a remand hearing. (Petition for Appeal, R. Item 12; Claimant's Br. at 10-11, 20, 22-23.) In this regard, Claimant asserts in her brief that "she did not realize 'her turn' had come [at the hearing]. In addition, [she] had prepared notes to aid in covering the presentation of evidence and testimony she needed to cover to make her case[,]" however, the Referee would not let Claimant read from her notes. (Claimant's Br. at 22.) Claimant also asserts that she "did not get to present her full case, almost all of her evidence was discarded as irrelevant." (Id. at 22-23.)

Although we appreciate that the UC appeals process can be challenging, especially for pro se litigants, our review of the record and hearing transcript reveals that Claimant was afforded the opportunity to present her testimony and additional evidence at the hearing. At the beginning of the hearing, the Referee asked all of the parties if they received the Notice of Hearing explaining their rights, to which Claimant answered that she did. (Hr'g Tr. at 2.) The Referee then stated the following:

> I will repeat your rights to you. Under the Pennsylvania Unemployment Compensation Law parties have certain rights. You have a right to be represented by an attorney or a non-legal representative of your choosing, you have a right to present testimony and evidence on your own behalf as well as that of witnesses, you have a right to question those witnesses, and you have a right to question witnesses of the opposing party.

(Id.) The Referee again asked if Claimant understood those rights, and Claimant responded that she did understand. (Id.) The Claimant was given the opportunity to question Employer's witness, (id. at 11-12), and present her own testimony and evidence, (id. at 12, 14, 20-21). Additionally, the Referee explained to Claimant

11

that "[t]his is your opportunity" to present testimony. (Id. at 14.) Claimant further contends that the Referee did not let her read from her prepared notes. The hearing transcript reveals that, when Claimant asked "Shall I give my long testimony at this point?[,]" the Referee replied, "Okay. I would prefer you not read from it but just give me your testimony as to why [you did not ask for permission to send the letter]." (Id.) Further, the Referee asked Claimant numerous times if she was finished and if she had anything else, to which Claimant answered no. (Id. at 16, 20.) The Referee did not prevent Claimant from presenting her testimony. Claimant also attempted to enter a number of documents into the record, including her handwritten notes documenting certain conversations and a doctor's note. (Id. at 21-23, 25.) Employer objected to those documents based on relevancy, and the Referee sustained some but not all of the objections. (Id. at 22-23, 25-26.) The Referee did permit the entry of a few pages of the employee handbook and Claimant's handwritten documentation of the errors made by the collection staff into the record, over Employer's objection, as support for the reasons why Claimant wrote the letters. (Id. at 24.) Thus, we conclude that Claimant did have ample opportunity to present her testimony and evidence at the hearing.

Turning to the merits, Claimant argues that she did not commit willful misconduct because she was not aware of the policy regarding insubordination, she was not warned of the policy, and she was not warned of the consequences of insubordination. In this regard, Claimant argues that Employer was not credible at the Referee hearing and that there is no substantial evidence to support the Board's findings of fact that she was aware of and warned of the policy or the consequences of violating that policy. However, Claimant did not testify at the hearing that she was not aware of Employer's insubordination policy. Further, in

12

her brief, Claimant attempts to argue for the first time on appeal that she could not have been expected to read and commit to memory the entire 24-page employee handbook that she received and signed on March 23, 2015. (Claimant's Br. at 10.) We note that Claimant did introduce pages from the handbook as evidence, and did not deny that she was warned repeatedly by Employer not to write any notes or letters to the collection staff, and she admitted that she refused to follow Employer's directive. (FOF ¶¶ 10, 12-13, 16; Board Decision at 3; Hr'g Tr. at 7, 9, 12, 16.)

Employer, on the other hand, presented evidence at the hearing that established its Disciplinary Action policy, which listed insubordination as an example of misconduct for which an employee may be disciplined up to and including termination, and that Claimant was aware of the policy because "she reviewed and signed the employee handbook upon the beginning of her employment in March of 2015." (FOF ¶¶ 3-4; Hr'g Tr. at 6; Disciplinary Action Policy and Conflict Resolution Procedures, R. Item 3 (both attached to Employer Questionnaire submitted in response to Claimant's claim for UC benefits).) Employer further established that Claimant violated Employer's insubordination policy by refusing to follow Employer's reasonable directive to stop writing notes and letters to the collection staff, and the Board, after review, determined that Claimant did write a "condescending" and "angry" 3-page letter despite Employer's reasonable directive not to do so. (FOF ¶¶ 8, 10-15; Board Decision at 3; Hr'g Tr. at 6-7.) "It is axiomatic that the refusal of an employee to obey the directive of his [or her] employer can constitute willful misconduct." Baillie v. Unemployment Comp. Bd. of Review, 413 A.2d 1199, 1201 (Pa. Cmwlth. 1980).

Additionally, Claimant argues that her action in writing the letter did not constitute willful misconduct because she was provoked by the ongoing situation at work that Employer would not address and that reflected poorly on both Claimant's work performance and on Employer. (Claimant's Br. at 15.) Claimant relies on Brown v. Unemployment Compensation Board of Review, 49 A.3d 933 (Pa. Cmwlth. 2012), as support.

We find that the circumstances here are distinguishable from those in Brown. In Brown, the claimant worked in a large warehouse with 605 employees and was discharged for using the word "moron" on a battery sign to prevent his co-workers from attempting to charge an inoperable battery, which could be dangerous. The Board found the claimant to be ineligible for benefits because the claimant violated Employer's policy against threatening behavior toward fellow employees as well as the standards of conduct every employer has the right to expect of an employee. Id. at 936. A majority of this Court, however, reversed and held that the claimant did not commit willful misconduct because his use of the word "'moron' was neither threatening nor far outside the bounds [of] what words might be spoken in a large and busy warehouse." Id. at 938. The majority also concluded that the claimant's use of that word was *de minimis* and provoked by the dangerous negligence of some unknown co-worker who attempted to charge an inoperable battery. Id. at 939.

Unlike in Brown, in which the claimant worked in a large and busy warehouse, Claimant here worked at a small collections agency as a bookkeeper and was previously directed numerous times to stop writing notes and letters to the collection staff. Claimant disregarded Employer's clear and reasonable directive and, instead, wrote what Employer has characterized as a "condescending and

14

angry" 3-page letter which she placed in each staff member's mailbox. Our review of Claimant's 3-page letter likewise shows that, unlike in Brown, this was not a *de minimis* violation of Employer's clear directives. (R. Item 3.) "A conclusion that the employee has engaged in disqualifying willful misconduct is especially warranted in . . . cases where . . . the employee has been warned and/or reprimanded for prior similar conduct." Oyetayo v. Unemployment Comp. Bd. of Review, 110 A.3d 1117, 1125 (Pa. Cmwlth. 2015) (quoting Ellis, 59 A.3d at 1163). Thus, there is substantial evidence of record showing that Employer met its burden of proving willful misconduct.

As for Claimant's contention that the Board erred in finding Employer credible, and that its findings are not supported by substantial evidence, we note that it is well-settled that the Board is the ultimate factfinder in UC cases and is, thus, empowered to make credibility determinations and resolve conflicts in the evidence presented. Curran v. Unemployment Comp. Bd. of Review, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). The Board here found Employer's testimony and evidence, including Claimant's 3-page, single-spaced letter to the collection staff, to be more credible than the testimony and evidence offered by Claimant, which it was empowered to do. As such, the Board did not err in concluding that Employer met its burden of proving willful misconduct, and the burden shifted to Claimant to establish good cause for her actions. Phila. Parking Auth., 1 A.3d at 968.

Claimant next argues that even if she did commit willful misconduct, she had good cause for her actions because Employer failed to take action with regard to the collection staff's repeated errors, and this affected her ability to do her job and her emotional and physical well-being. (Claimant's Br. at 12, 17-18.) Claimant asserts that she experienced "extreme mental anxiety" due to her work

environment, which led to her hospitalization for an ulcer and a complete intestinal blockage. (Hr'g Tr. at 25.) However, our review of the record in this case, when viewed in the light most favorable to Employer, demonstrates that there is substantial evidence to support the Board's determination that Claimant did not have good cause for refusing to comply with Employer's reasonable directive to Claimant to stop writing notes and letters to the collection staff. Specifically, there is no evidence that Claimant informed Employer of her medical conditions, which she claims were caused by the stress she experienced at work due to the collection staff's inability to follow the rules, nor is there an explanation of why that would constitute good cause for writing the 3-page letter admonishing her co-workers. There is evidence, however, that Claimant's actions in writing notes and letters, "often derogatory in tone[,]" to the collection staff were "a negative influence on the morale of the entire staff." (Id. at 7.) The record also reflects that Claimant did not have any managerial authority over the collection staff, and she did not have, nor did she seek, permission from any of her superiors to write the letter. (FOF ¶¶ 7, 16; Hr'g Tr. at 7, 14.) As such, we agree with the Board that Claimant's dissatisfaction with Employer's management of its other employees does not constitute good cause for her refusal to follow Employer's reasonable directive. Therefore, the Board did not err in finding Claimant ineligible for benefits pursuant to Section 402(e) of the UC Law.

Accordingly, the Board's Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wendy Glazewski,                                    :
                        Petitioner                  :
                                                    :
                v.                                  :    No. 822 C.D. 2016
                                                    :
Unemployment Compensation                           :
Board of Review,                                    :
                        Respondent                  :

# **O R D E R**

**NOW**, December 28, 2016, the May 4, 2016 Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge